## Richmond

LAWRENCE WALTERS

V.

EDGAR CARL LITTLETON, ET AL.

April 30, 1982.

Record No. 802042.

Present: Carrico, C.J., Cochran, Poff, Compton, Thompson, and Stephenson, JJ., and Harrison, Retired Justice.

*Jeffrey G. Haverson (Dail and Haverson,* on brief), for appellant.

*Robert L. Mills (Douglas B. Smith; Reynolds, Smith & Winters,* on brief), for appellees.

COCHRAN, J., delivered the opinion of the Court.

In this personal injury case we decide whether testimony by a plaintiff as to the medical expenses he incurred as a result of his injuries and the bills received for such expenses were admissible in evidence.

On June 10, 1979, Lawrence Walters was injured in an automobile accident while riding as a passenger in a car driven by Joyce White. Walters filed a motion for judgment for damages against Edgar C. Littleton, the driver of the car which collided with White's. Littleton joined White as a third-party defendant. At the trial of the case, the jury returned verdicts for Walters against Littleton and for Littleton against White. The jury assessed Walters' damages at "$500.00 to include for pain and suffering medical expense." The court entered judgment for Walters against Littleton in the amount of $500 and for Littleton against White in the amount of $250.

On appeal, the parties do not dispute the jury's findings of liability. Walters, however, maintains that the trial court erred in not admitting in evidence his medical bills and his testimony which would have related the charges on the bills to the injuries he sustained in the accident. Walters also assigns error to the trial court's refusal, based on its evidentiary rulings, to instruct the jury on hospital and medical expenses as elements of damages.

At trial, counsel for Walters questioned him about "any problems with . . . [his] body immediately after this collision." Walters told the jury, without objection, that stitches he had in his foot at the time of the collision came loose and bled as a result of the collision. He testified that his head hit the windshield, and that an ambulance took him from the accident scene to "Norfolk General." Doctors at Norfolk General treated his bleeding foot,

heard his complaints about pain in his head and knee, and "told . . . [him] to go see . . . [his] family doctor."

Walters testified in detail about subsequent treatment he received from other doctors for the injuries he related as having resulted from the accident. He testified that Dr. James Clarke, a podiatrist, treated his foot and took x-rays of it. He said that Dr. Boyd, his "family doctor," treated his other injuries. Walters introduced in evidence a photograph of his injured knee, and testified that he had x-rays performed at Norfolk Community Hospital on his head, chest, back, sides, and knee.

The court refused to admit five bills, each regular on its face, proffered by Walters. Plaintiff's Exhibit A was a statement for $30 addressed to Walters from the City of Norfolk for "Emergency Ambulance Service" performed June 10, 1979. Plaintiff's Exhibit B was a $50 bill to Walters from "Dr. James H. Clarke, D.P.M., Podiatric Medicine" for diagnostic x-rays on June 28, 1979 ($35) and for office visit and treatment on July 5, 1979 ($15). Plaintiff's Exhibit C was a $115 bill to Walters from Norfolk Community Hospital for "X-ray — Diagnostic" of "skull," "ribs," "cerv," "lumb-sacral," and "knee," performed July 10, 1979. Plaintiff's Exhibit D was a $71 bill to Walters from "Drs. Southall and Hopkins . . . Radiologists" for x-rays taken July 10, 1979, which corresponded with the hospital x-ray charges of Exhibit C. Exhibit E was a $26.20 bill to Walters from "Norfolk General Division Medical Center Hospital" for a "balance forward" from an admission and discharge on June 10, 1979.

When Walters attempted to introduce the bills as exhibits and relate them to his described injuries, the court ruled that Walters was not "a proper witness to admit" the bills.[1] The court further ruled that Walters could not testify that he received any bills and could not state the amounts of the charges. The parties stipulated that Walters would have testified that he received the bills in the amounts shown on the refused exhibits.

The basis for the trial court's ruling is unclear. The court's apparent finding that Walters was not "a proper witness to admit" the bills seems to indicate that the court found that Walters was

---

[1] Walters was permitted to testify to the amount of Dr. Boyd's bill, $205, because Dr. Boyd had previously testified as to his services. Accordingly, Dr. Boyd's bill was admitted into evidence, and the jury was permitted in the damage instruction to consider "doctors" expenses, but not hospital or medical expenses.

incompetent[2] to testify concerning the bills. What Walters was prepared to offer as a witness, however, did not involve matters beyond the scope of his knowledge or experience. The trial court properly permitted him to state the nature and extent of his injuries, how he received them, and where, how, when and by whom he was treated. *Sumner* v. *Smith,* 220 Va. 222, 257 S.E.2d 825 (1979). To have permitted him to offer bills showing on their face that he had received them from the same service providers as a result of the same injuries during the same time period would not have extended his testimony beyond his competence. Walters was not prepared to testify to the reasonableness of the bills, but only to the fact that he had received them as a consequence of the accident.

In *Crist* v. *Fitzgerald,* 189 Va. 109, 120, 52 S.E.2d 145, 150 (1949), we noted that the plaintiff "could have testified as to the amount demanded of her," if the medical statements had been sent to her. Such testimony requires no special training or expertise and is admissible in evidence. *See* McCormick on Evidence §§ 13, 69 and 71 (2nd ed. 1972).

■ The appellees seek to justify the trial court's ruling on the ground that the bills were hearsay. The bills were not hearsay. Their probative value in showing Walters' damages did not depend upon an out-of-court assertion, but upon Walters' assertion, based on an adequate foundation,[3] that he received them for the services provided him. *See Stevenson* v. *Commonwealth,* 218 Va. 462, 464-65, 237 S.E.2d 779, 781 (1977); *Williams* v. *Morris, Administratrix,* 200 Va. 413, 416-17, 105 S.E.2d 829, 832 (1958). Thus, the bills were not merely reports of what the service providers charged, they were the charges themselves. Walters should have been permitted to introduce the bills he received as a

---

[2] Narrowly viewed, "competency" refers to the common-law rules which establish guidelines for disqualification of witnesses on grounds such as mental incapacity or immaturity. More broadly, and as used herein, the term refers to the qualification of a witness to speak to a particular matter. *See* McCormick on Evidence, §§ 13 and 61-71 (2d ed. 1972). In respect to Walters' testimony, the term encompasses the issues whether he had firsthand knowledge of the facts he was prepared to relate and whether he needed "expert" qualifications to offer the testimony.

[3] Whether the bills were shown to be relevant to the injuries Walters received in the accident is a related problem, intertwined with the defendants' hearsay argument. Walters established an adequate foundation for the bills' relevancy when he testified in detail concerning his injuries and treatment. The bills matched on their face this necessary foundation.

consequence of his injuries and testify to them from firsthand knowledge and subject to cross-examination. *See Clodfelter* v. *Commonwealth,* 218 Va. 98, 103-04, 235 S.E.2d 340, 343, *rev'd on other grounds on rehearing,* 218 Va. 619, 238 S.E.2d 820 (1977); *Claud* v. *Commonwealth,* 217 Va. 794, 796-97, 232 S.E.2d 790, 792 (1977); *Stevens* v. *Mirakian,* 177 Va. 123, 131, 12 S.E.2d 780, 783 (1941).

■ The appellees also contend that Walters' medical bills were "not properly authenticated or verified." They make this claim, however, only within the context of their hearsay objection by saying that the business-entry exception to the hearsay rule does not permit verification of bills as business entries without testimony by a custodial record keeper.

The appellees confuse authentication and hearsay. All writings are subject to the requirement of authentication, which is the providing of an evidentiary basis sufficient for the trier of fact to conclude that the writing came from the source claimed. Lilly, An Introduction to the Law of Evidence, § 1·12 (1978); *see Bain* v. *Commonwealth,* 215 Va. 89, 205 S.E.2d 641 (1974). This has nothing to do with whether a writing is hearsay. Since the bills were not hearsay, their admission did not depend on an exception to the hearsay rule and their authentication was a separate and distinct evidentiary problem.

■ Writings may be authenticated by circumstantial evidence. *Bain* v. *Commonwealth,* 215 Va. 89, 205 S.E.2d 641 (1974). *See Maynard* v. *Bailey,* 85 W. Va. 679, 102 S.E. 480 (1920) and Mc-Cormick on Evidence, § 222 (2nd ed. 1972). The amount of evidence sufficient to establish authenticity will vary according to the type of writing, and the circumstances attending its admission, but generally proof of any circumstances which will support a finding that the writing is genuine will suffice. *Id.* In the present case, the appellees never seriously challenged the authenticity of the bills in the trial court. On appeal, they do not specifically question that the bills came from the service providers shown on the bills, but only challenge the "authentication and verification" of the bills because they erroneously believe them to be hearsay.

■ Properly viewed, Walters' evidence was ample to show authenticity. Bills are rarely signed, but usually contain listings of goods or services, with applicable dates and charges, in writings identifying the names and addresses of the payees. All of Walters' bills were regular on their face and were consistent with his testi-

mony as to his injuries and treatment. Absent a challenge to authenticity, this evidence sufficed to show that the bills came from the sources claimed.

Finally, the appellees seek to justify the trial court's refusal to admit the bills on the ground that they were offered with no proof of their reasonableness. We agree that Walters may be compensated only for the reasonable value of services rendered him and not necessarily for amounts actually billed or paid. Whether the bills were reasonable, however, is a question for the finder of fact.

There is a split of authority on the type and quantum of evidence necessary to create a jury issue on the reasonableness of medical expenses. *See* Annotation, "Necessity and Sufficiency, in Personal Injury or Death Action, of Evidence as to Reasonableness of Amount Charged or Paid for Accrued Medical, Nursing, or Hospital Expenses," 12 A.L.R.3d 1347. With the proviso that a proper foundation must precede introduction of the bills, we agree with the reasoning of those courts which have held that evidence presented by bills regular on their face of the amounts charged for medical service is itself some evidence that the charges were reasonable and necessary. *See Neloms* v. *Carmichael,* 125 Ga. App. 331, 187 S.E.2d 555 (1972); *Giant Food Stores, Inc.* v. *Bowling,* 202 A.2d 783 (D.C. App. 1964); *Bonczkiewicz* v. *Merberg Wrecking Corp.,* 148 Conn. 573, 172 A.2d 917 (1961); *Miller* v. *Mills,* 257 S.W.2d 520 (Ky. 1953); *Malinson* v. *Black,* 83 Cal. App.2d 375, 188 P.2d 788 (1948); *Gant* v. *Gas Service Co.,* 156 Kan. 685, 135 P.2d 533 (1943); and *Northwest States Utilities Co.* v. *Ashton,* 51 Wyo. 168, 65 P.2d 235 (1937). Whether the bills and the foundation for their admission are sufficient to create a jury issue on reasonableness in a particular case, however, will depend upon the facts of the case.

In the present case, Walters testified to the nature and extent of his injuries and explained the details of his treatment. The injuries were minor, the treatments simple, and the amounts charged totalled less than $600. On these facts we cannot say as a matter of law that a jury could not have been justified in concluding that the bills were reasonable.

To require plaintiffs in claims such as Walters' to produce as witnesses all who provided medical services might effectively deny access to the courts to many who with meritorious but small claims cannot afford the high cost of expert medical testimony.

We hold that the trial court erred in excluding the bills and the testimony of Walters relating thereto. It follows that the damage instruction, omitting any provision for hospital and medical expenses, was erroneous. Accordingly, we will reverse the judgment of the trial court and remand the case for a new trial limited to the issue of damages.

*Reversed and remanded.*

STEPHENSON, J., dissenting.

We have defined hearsay as: "testimony in court, or written evidence, of a statement made out of court, the statement being offered as an assertion to show the truth of matters asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter." *Stevenson* v. *Commonwealth,* 218 Va. 462, 465, 237 S.E.2d 779, 781 (1977). The majority concludes the bills sought to be introduced in this case do not fall within the definition. I cannot agree.

Each bill constituted an out-of-court statement by a service provider. Each contained two relevant assertions: first, that a service was provided and, second, that a certain charge was made for it. Walters introduced the bills to show the truth of these assertions.

Walters was competent to testify from his first-hand knowledge as to the services he received.* He could also testify he received the bills. This testimony, however, does not go to the crucial issue of the amount of damages. If, as the majority asserts, the bills are not being introduced to show these amounts, Walters is left with no evidence in this regard.

I share the majority's concern that the trial court's ruling places an obstacle in the way of those with small claims. However, the General Assembly has shown it is cognizant of the problem. Code § 16.1-88.2 provides a procedure for the introduction of medical reports and statements of costs in the district courts. If the General Assembly wished to extend this procedure to the circuit courts, it would do so. *See, e.g.,* Code § 8.01-416 (allowing for the introduction of automobile repair estimates in both the district

---

* Thus, Walters was allowed to testify that he had x-rays taken at the Norfolk General Hospital. However, the trial court correctly sustained an objection when Walters was questioned as to what these x-rays showed.

and circuit courts). If, as the majority suggests, these bills are not hearsay, there would be no reason for Code § 16.1-88.2.

Our Rules of Court also provide a means to avoid the practical problems of which the majority speaks. Rule 4:13 provides for a pretrial conference to consider, among other things, "[t]he possibility of obtaining admissions of fact and of documents which will avoid unnecessary proof." In a majority of cases involving small claims, counsel should be able to stipulate the amount of the medical bills, avoiding the necessity of proof.

For the reasons stated, I believe the trial court correctly refused to admit the proffered bills. This being so, I find it unnecessary to discuss whether Walters met his burden of proving the expenses were reasonable.

CARRICO, C.J., and THOMPSON, J., join in dissent.