COURT OF APPEALS OF VIRGINIA

Present:    Chief Judge Decker, Judges Beales and O'Brien
Argued by videoconference


VIRGINIA INTERNATIONAL TERMINALS, LLC
  AND ARCH INSURANCE COMPANY
                                                    MEMORANDUM OPINION* BY
v.      Record No. 1077-20-1              CHIEF JUDGE MARLA GRAFF DECKER
                                                         APRIL 6, 2021
NEUROSURGICAL SPECIALISTS, INC.


            FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

        F. Nash Bilisoly (W. Thomas Chappell; Daniel A. D. Salmon;
        Vandeventer Black LLP, on briefs), for appellants.

        Philip J. Geib (Philip J. Geib, P.C., on brief), for appellee.


        Virginia International Terminals, LLC, and Arch Insurance Company (jointly, the

employer) appeal the Workers' Compensation Commission's award to the medical provider,

Neurosurgical Specialists, Inc.  The employer contends that the Commission erred by concluding

that the medical provider established a *prima facie* case that the medical bills reflected the

prevailing community rate.  Alternatively, the employer argues that regardless, it rebutted that

presumption.  Last, it challenges the Commission's award of attorney's fees to the medical

provider.  For the reasons that follow, we affirm the Commission's decision, including the award

of attorney's fees.

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

## I. BACKGROUND[1]

In 2016, Calvin Piland was injured while working for Virginia International Terminals. He was awarded workers' compensation medical benefits for the injuries. Neurosurgical Specialists provided the injured employee with various medical treatments. The employer paid some, but not all, of the charges.

The medical provider filed a claim with the Commission for unpaid medical fees for services rendered from November 2016 through March 2017.[2] The employer defended the claim, in pertinent part, on the ground that the amounts billed did not reflect the prevailing community rate. The medical provider also sought an award of attorney's fees for the employer's allegedly unreasonable defense of its claim.

At the evidentiary hearing, Tracy Patrick, the billing and coding supervisor for the medical provider, testified. She explained that Neurosurgical Specialists fixed its prices for various procedures based on an external fee schedule.[3] The practice entered its internal fee schedule into a billing program. To create an invoice, billing office personnel enter the medical procedure codes into the program, and the program automatically generates the corresponding

---

[1] In appeals from the Commission, we view the evidence in the light most favorable to the prevailing party below, in this case, the medical provider. Newport News Shipbldg. & Dry Dock Co. v. Wardell Orthopaedics, P.C., 67 Va. App. 404, 412 (2017).

[2] The total amount in dispute is $6,612.76.

[3] Patrick testified that the office used "RVUs" to set its fee schedule. To define an RVU, Patrick said only that it is short for a "relative value unit" and is a "number that Medicare assigns to each code." Medicare uses RVUs to determine payment amounts by assigning an RVU for each service and adjusting it based on various factors. See Ctrs. for Medicare & Medicaid Servs., Dep't of Health & Hum. Servs., PFS Relative Value File 2016, at 1-2, https://www.cms.gov/Medicare/Medicare-Fee-for-Service-Payment/PhysicianFeeSched/PFS-Relative-Value-Files-Items/RVU16B (RVUPUF16.pdf). See generally Code § 8.01-388 (authorizing "judicial notice of the contents of all official publications").

charges. Patrick made clear that the medical provider billed for various procedures in the same fashion regardless of the identity of the payor.

The employer entered into evidence a deposition of Dr. David Waters, president of Neurosurgical Specialists. He explained that carriers pay the medical provider based on the type of medical procedure and without any consideration of the charged amount. That amount paid is set by the carrier or by the contract with a particular insurance provider. Dr. Waters stated that the practice does not compare its charges to those of other practices, and he did not know if the medical provider's charges were "reasonable." He also did not know how the practice determines its fee schedule. During his deposition, Waters could not answer many of the questions about the office's billing practices.

The employer also introduced into evidence a compilation of amounts paid to Neurosurgical Specialists from March 9, 2016, to March 9, 2018, for the same procedures at issue in this case. It argued that the accounts receivable showed that the medical provider accepted payments of 25%-90% less than it charged for the services in the instant case and thus demonstrated that the amounts charged were not reasonable or limited to the prevailing community rate.

Following the hearing, the deputy commissioner allowed the parties to brief the issue of whether "payments received by a medical practice [were] evidence of the prevailing community rate." After reviewing the briefs, the deputy commissioner ultimately ruled in the medical provider's favor. The deputy commissioner concluded that the medical bills were *prima facie* evidence that the contested charges were reasonable. She further found that the employer did not sufficiently prove that the medical provider's charges exceeded the prevailing community rate. Finally, the deputy commissioner awarded the medical provider $1,000 in attorney's fees based

on her conclusion that the employer's reliance on the payments received by the medical provider was *per se* insufficient to establish that the charges exceeded the prevailing community rate.

The employer requested review by the Commission, which unanimously affirmed the decision of the deputy commissioner. The Commission concluded that the deputy commissioner "correctly held that the presumption of reasonableness was applicable to the medical provider in this case." It also agreed that the employer's attempt to rebut the presumption was an unreasonable defense and supported the award of attorney's fees to the medical provider.

## II. ANALYSIS

The employer raises three assignments of error on appeal. First, it argues that the medical provider was not entitled to a presumption that the charges reflected the prevailing community rate. Second, the employer alternatively suggests that it rebutted that presumption. Third, it contends that the Commission erred by awarding the medical provider attorney's fees.

Under settled principles of appellate review, we consider the evidence in the light most favorable to Neurosurgical Specialists as the prevailing party before the Commission. See Newport News Shipbldg. & Dry Dock Co. v. Wardell Orthopaedics, P.C., 67 Va. App. 404, 412 (2017). "The Commission's determinations of fact are conclusive and binding on appeal . . . ." Carrington v. Aquatic Co., 297 Va. 520, 522 (2019); see also Code § 65.2-706(A). However, this Court is "bound by the [C]ommission's findings of fact" only if "'there was credible evidence presented such that a reasonable mind could conclude that the fact in issue was proved,' even if there is evidence in the record that would support a contrary finding." Anderson v. Anderson, 65 Va. App. 354, 361 (2015) (alteration in original) (quoting Artis v. Ottenberg's Bakers, Inc., 45 Va. App. 72, 83-84 (2005) (*en banc*)). Nevertheless, "[s]uch deference to the Commission does not extend to questions of law, which we review *de novo*." Id.

A.  *Prima Facie* Case

The employer contends that the Commission erred by determining that a medical provider's bill can constitute *prima facie* evidence that the charges were consistent with the prevailing community rate without evidence beyond the bill itself.

Under the Virginia Workers' Compensation Act, an employer must "furnish or cause to be furnished . . . necessary medical attention" to treat a compensable injury or illness "free of charge to the injured employee."  Code § 65.2-603(A)(1).[4]  Under this statute, "if the [C]ommission enters an award for an injury resulting in an employee's work incapacity, the employer must pay for all reasonable and necessary medical treatment for the injury."  Ceres Marine Terminals v. Armstrong, 59 Va. App. 694, 702-03 (2012).  The charges for medical treatments for the compensable injury or illness "shall be subject to the approval and award of the Commission."  Code § 65.2-714(A).  In effect, the purpose of this statutory provision is to prevent medical providers from "overcharg[ing] for their services."  Fredericksburg Orthopaedic Assocs. v. Fredericksburg Mach. & Steel, 62 Va. App. 83, 88 (2013) (quoting Bee Hive Mining Co. v. Indus. Comm'n, 144 Va. 240, 242 (1926)).  At the time of the disputed services, an employer's liability for a provider's charges was "limited . . . to such charges as prevail in the same community for similar treatment when such treatment is paid for by the injured person."[5]  Code § 65.2-605 (2012 & Supp. 2016).

---

[4] The Act has been amended since the claimant's injury occurred, but the statutory language relevant to our analysis remains unchanged unless otherwise noted in this memorandum opinion.

[5] Code § 65.2-605 also permits a medical provider and insurance carrier to determine fees through contract.  See 2016 Va. Acts chs. 279, 290 (adding this provision to the statute).  In addition, medical fee schedules help set the cost for certain medical services.  See Code § 65.2-605(B)-(C) (2012 & Supp. 2016) (noting that the Virginia Medical Fee Schedules govern the allowable fees for listed medical services provided *on or after January 1, 2018*).

It is clear that the Commission may consider a "medical bill as *prima facie* evidence that the charges were consistent with the requirements of the Act." Ceres, 59 Va. App. at 703. In other words, the Commission can accept a medical bill as evidence that the included medical charges reflect rates that prevail in the same community and are not excessive. See id. See generally Bogle Dev. Co. v. Buie, 19 Va. App. 370, 375 (1994) (holding that the medical bills were *prima facie* evidence of the medical expenses), rev'd on other grounds, 250 Va. 431 (1995). If the Commission accepts a bill as providing *prima facie* proof, the burden falls to the employer to "prov[e] that the medical fee was excessive." Ceres, 59 Va. App. at 703.

The law is equally clear that just as the Commission may accept a bill as *prima facie* evidence, it may also decline to consider it as such. Fredericksburg Orthopaedic, 62 Va. App. at 89. See generally Bethea v. Commonwealth, 297 Va. 730, 750 (2019) (defining "*prima facie*" in part as "[s]ufficient to establish a fact or raise a presumption unless disproved or rebutted; based on what *seems to be true* on first examination, even though it may later be proved to be untrue" (alteration in original) (quoting Prima Facie, Black's Law Dictionary (11th ed. 2019) (emphasis added))). In any case, a decision of the Commission regarding whether a medical bill is *prima facie* evidence that a charged fee is reasonable is a factual finding. See Fredericksburg Orthopaedic, 62 Va. App. at 87; see also Bethea, 297 Va. at 750 (considering the application of the *prima facie* standard in the jury selection context); cf. Walters v. Littleton, 223 Va. 446, 452 (1982) (reaching the same conclusion in addressing the reasonableness of medical charges in a personal injury case).

The employer suggests that Fredericksburg Orthopaedic "clarified" the holding in Ceres and stands for the proposition that in order for the presumption to apply, the medical provider must present some evidence that its charges were limited to the prevailing community rate. In Fredericksburg Orthopaedic, 62 Va. App. at 85-86, the medical provider consistently used two

different fee schedules: one for medical services related to workers' compensation claims and another for other medical services. However, the medical provider did not present any evidence justifying the difference. Id. at 88-89. In light of the 40% surcharge the provider added to fees for workers' compensation patients in that case, this Court affirmed the Commission's factual finding that the bills at issue were not *prima facie* evidence that the charges were reasonable. Id. We construe Fredericksburg Orthopaedic to clarify Ceres only to the extent that it emphasizes that although the Commission may consider medical bills as *prima facie* evidence, it is not required to do so. See id. at 89. The two cases are in harmony.[6] See generally King William Cnty. v. Jones, 66 Va. App. 531, 545-46 (2016) (*en banc*) (after engaging in "best efforts to harmonize [two] lines of cases," concluding "that they simply [could not] be reconciled," resulting in the decision of the Court, sitting *en banc*, to affirm one line and overrule the other).

A medical bill alone can constitute *prima facie* evidence that the included charges reflect rates that prevail in the same community, and in this case, the medical provider did not need to introduce additional evidence supporting the charges contained in the medical bills. See Ceres, 59 Va. App. at 703. Unlike the record in Fredericksburg Orthopaedic, the record here does not contain any evidence showing that it was unreasonable as a matter of law for the Commission to consider the medical bills at issue as *prima facie* evidence of the prevailing community rate. The employer, however, cites Dr. Waters' deposition for support of its position that the medical provider's rates were unreasonable and thus it was not entitled to consideration of its medical

---

[6] The employer also argues that affirming the Commission's decision on this point would be poor policy. Courts do not consider policy-based arguments regarding statutes. Policy is the role of the legislature. See, e.g., Va. Elec. & Power Co. v. State Corp. Comm'n, 284 Va. 726, 742-43 (2012). In any event, the doctrine of interpanel accord provides that the panel is bound by Ceres and Fredericksburg Orthopaedic, which do not conflict with one another. See generally Hannon v. Commonwealth, 68 Va. App. 87, 97 (2017) ("'Under the interpanel accord doctrine, [a subsequent panel] lack[s] the authority to revisit' prior published opinions of the Court of Appeals." (alterations in original) (quoting Butler v. Commonwealth, 64 Va. App. 7, 12 (2014))).

bills as *prima facie* evidence. Although Waters did not know if the charges were reasonable or what other medical providers in the area charged, he also testified that he was not involved in setting the medical provider's internal billing rates. The Commission, as fact finder, was charged with assessing Dr. Waters' deposition testimony and determining the appropriate weight to give its various portions. See Kelley v. Commonwealth, 69 Va. App. 617, 626 (2019) (explaining that a finder of fact, in evaluating witness testimony, is entitled reject it, accept it in whole, or accept it in part); Hamilton v. Pro-Football, Inc., 69 Va. App. 718, 727 (2019) (noting the Commission's role as fact finder in assessing witness credibility). Further, Tracy Patrick's testimony that the billing rates were based on an external fee schedule and applied equally regardless of payor supported the conclusion that the charges contained in the bills were reasonable. No evidence compelled the contrary conclusion that the charges were excessive.

For these reasons, the Commission, as the finder of fact, reasonably considered the medical provider's bills as *prima facie* evidence that the charges therein were limited to the prevailing community rate, and we affirm the Commission's decision.

### B. Reasonableness of Medical Fees

The employer argues that even if it was reasonable for the Commission to consider the medical bills as *prima facie* evidence that the charges complied with the Act, its evidence of the payments actually accepted by the medical provider over a period of time rebutted that presumption as a matter of law.

Once the Commission determines that a medical bill is *prima facie* evidence that the charges reflected the prevailing community rate, the burden shifts to the employer to "prov[e] that the medical fee" exceeded the charges that prevailed in the same community for similar treatments. Ceres, 59 Va. App. at 703; see Code § 65.2-605. "A charge which prevails in the community plainly means that which 'is in general or wide circulation or use' in the community

- 8 -

at the time of the treatment." Ceres, 59 Va. App. at 706 (quoting Prevailing, Webster's Third New International Dictionary (1981)). The "ultimate question" in determining this issue is what a similarly situated provider would "typically charge" for the treatment rendered "at the time and in the community" in which the treatment was provided. Id. Further, the determination of whether a medical charge is reasonable is a factual one left to the Commission. Cf. Walters, 223 Va. at 452 (addressing the reasonableness of medical expenses in a personal injury case).

The evidence that the employer relies on to attempt to prove that the charges were excessive is the amounts received by the single medical provider from other payors for the same procedures at issue in this case. In Ceres, this Court rejected an argument similar to the employer's argument here. In that case, the employer suggested that "the government-mandated reimbursement rate for injured longshoremen or Medicare patients, standing alone, . . . prove[d] what the prevailing rate in the community was" for the treatment at issue. Ceres, 59 Va. App. at 706. In response, this Court held that this "statistic sa[id] nothing about the rate typically charged for [the claimant's] particular procedure in the community." Id. The Court expressly rejected the proposition that under the Act, the medical provider was entitled to payment only for the amount it normally received for that procedure. Id. at 706-07.

As in Ceres, the instant medical provider is not limited to payment for the amount it normally receives for the same procedure. The controlling standard limits the amount due to the rate that prevails in the community. The Commission correctly concluded that the evidence of what the medical provider, a single medical provider in the community, received did not prove that the charged rates exceeded those typical at the time in the same community.

C. Attorney's Fees

Concluding that the way in which the employer attempted to rebut the *prima facie* evidence was unreasonable, the Commission awarded the medical provider $1,000 in attorney's fees. The employer argues that this decision constitutes reversible error.

"The decision to assess fees or costs [pursuant to Code § 65.2-713] rests in the sound discretion of the [C]ommission and will be reversed only for an abuse of that discretion." Philip Morris USA v. Mease, 62 Va. App. 190, 203 (2013) (quoting Va. Polytechnic Inst. & State Univ. v. Posada, 47 Va. App. 150, 159 (2005)). Consequently, the Court will reverse the Commission's award of attorney's fees only if "reasonable jurists could not differ as to the proper decision." Wynnycky v. Kozel, 71 Va. App. 177, 193 (2019) (quoting Reston Hosp. Ctr. v. Remley, 63 Va. App. 755, 764 (2014) (internal quotation marks omitted)).

Code § 65.2-713(A) provides that the Commission can assess attorney's fees against an employer or insurer if it defended "without reasonable grounds" against a claim. The reasonableness of a defense "is to be judged from the perspective of the employer, not the employee." Philip Morris, 62 Va. App. at 203 (quoting Lynchburg Foundry Co. v. Goad, 15 Va. App. 710, 716 (1993)). A defense is not unreasonable for the purposes of Code § 65.2-713(A) merely because "it is later proven misplaced or in error." Lynchburg Foundry, 15 Va. App. at 716 (quoting Volvo White Truck Corp. v. Hedge, 1 Va. App. 195, 201 (1985)).

Here, the Commission found that the employer's "failure to produce any evidence to rebut the presumption constituted an unreasonable defense of the . . . claim." The employer relied on evidence of what the instant medical provider, a single medical provider in the community, historically received in order to prove the rates exceeded those typically charged at the time in the same community. This Court has already held that a medical provider is not limited in seeking payment for a procedure to the amount it normally receives for the same

procedure. <u>Ceres</u>, 59 Va. App. at 706-07. The controlling standard is the rate that prevails in the community, a standard that is not met by evidence of what the single medical provider received. Under these circumstances, the Commission did not abuse its discretion in concluding that the employer's defense on this issue was unreasonable and awarding the medical provider $1,000 in attorney's fees.

### III. CONCLUSION

The Commission, applying the appropriate legal standard, reasonably considered the medical bills as *prima facie* evidence that the charges were consistent with the rate that prevailed in the community. The Commission correctly found that the employer failed to rebut that *prima facie* evidence by presenting evidence of the amounts the specific medical provider involved in the case normally received for the same procedures. Finally, it did not abuse its discretion in concluding that the employer's attempt to rebut the *prima facie* evidence was unreasonable and awarding the medical provider $1,000 in attorney's fees. For these reasons, we affirm the Commission's decision.

<u>Affirmed.</u>